No. 12,860.

Mrs. Henriette Liminet, Wife of Eugene Darcourt, vs. Paul I.
Fourchy.

51 1299
52 178

### Syllabus.

When plaintiff, in garnishment proceedings, seeks, under a traverse to garnishees'
answers, to raise issues not proper to be raised in such a proceeding, the
garnishees should except thereto, and not permit the issues to be tried and
disposed of under evidence adduced without objection. (Carter Bros. & Co.
vs. Galloway, 36th Ann., 732).

ON APPEAL from the Civil District Court for the Parish of Or-
leans. *Theard, J.*

*J. H. Ferguson* and *Albert Voorhies* for Plaintiff, Appellant.

*Edward Rightor* for T. Dumas and T. Dumas Co., Limited,
Garnishees, Appellees.

Argued and submitted March 24, 1899.
Opinion handed down April 17, 1899.
Rehearing refused June 12, 1899.

The opinion of the court was delivered by

NICHOLLS, C. J.   The plaintiff obtained judgment by confession against the defendant, for three thousand dollars, and interest.

On this judgment, she caused a writ of *fi. fa.* to issue, and simultaneously, by supplemental petition, took out garnishment proceedings against Theodore Dumas, individually, and the firm of T. Dumas Co., Limited, who she alleged she had reason to believe were indebted to her judgment debtor, Paul Fourchy, or had property or effects of his in their possession or under their control.

The usual interrogatories were propounded to those parties to be answered, and the same were answered by them, under order of court.

Garnishees in their answers denied expressly and directly, being either indebted to Fourchy, or having any property or effects of his in their possession or under their control.   Dumas declared under oath both individually and as representing the T. Dumas Co., Limited, not only that neither he himself, nor the company was indebted to him, nor had any property or effects of his in their possession or under their control; but that, he, on the contrary, was indebted to both the company and Dumas individually, by reason of having been the attorney of the company at one time and of Dumas himself for several years.

After said answers were made and filed, plaintiff suggested that the answers made were false; that garnishees were indebted to her judgment debtor in the sum of thirty-eight hundred dollars.

On this suggestion, the court, at plaintiff's instance, ruled the garnishees to show cause why the interrogatories should not be taken for confessed, and judgment rendered against them for the amount of plaintiff's judgment and interest.

After evidence taken the District Court dismissed the rule, and plaintiff appealed.

### OPINION.

If the defendant, Fourchy, had any unliquidated claims against Theodore Dumas, or T. Dumas & Co., Limited, and the existence of the same was denied by them, the proper course for him to have pursued would have been to advance them in a direct action in a petition in which those claims would be clearly and specifically set forth.

The defendants under such circumstances, would have been en-

titled to citation, and to have availed themselves of all exceptions and means of relief which would have existed in their favor in a proceeding so brought.

The present proceeding, though it has taken the form and shape of one brought by the plaintiff, adversely to the defendant, in which she is attempting to cause to have forcedly applied to the payment of her judgment against Fourchy, debts due to him by the garnishees, impresses us very strongly as one where the latter is seeking to have brought forward not directly as a party plaintiff himself, but collaterally against Dumas and Dumas & Co., debts which he asserts were due by them to himself, and to establish them through his own testimony as a witness for the plaintiff.

The defendants denied all liability, and it is evident that a traverse of their answers carried with it really the injection into garnishment proceedings of a litigated suit with Fourchy technically not a party thereto.

We find from the record that in order to reach a conclusion in respect to the liability of the garnishees, we have to determine first the litigated question whether there ever was a liability, on their part, to the defendant, and if so, how much, and next, having found such indebtedness to have existed, to determine whether the same had not been entirely or partially extinguished by counter claims.

In support of their position that they were entitled to have a direct action brought against them for the establishment of any liability on their part to Fourchy, appellees refer us to several places in Waples on Attachment, where reference is made to the necessity and propriety of keeping garnishment proceedings within the narrowest bounds consistent with justice to all parties. On pages 377 and 378 the author says:

"When the plaintiff is allowed to traverse the answer of the garnishees and to contradict it by other testimony, the latter has an interest in the contest and that gives him the right to meet and refute such testimony by counter evidence. There would be no justice in a proceeding tending directly to charge him with liability unless he be allowed thus to resist it. His interest and therefore his right, is confined to his own protection from the danger of being obliged to pay *twice*, if he is indebted, but if he is not indebted his interest and the correlative right give him the position of a resistant against the danger of being condemned to pay once.

Here there is a suit within a suit, a contest within a contest; and it is manifest that it should be confined within the narrowest bounds consistent with justice to all the parties. The defendant in the attachment suit who looks on without participating in the incidental contest sees his business relation with his agent or alleged debtor undergoing judicial investigation and gathers items that may subserve his purpose in case the same questions should arise in any subsequent suit by him against the third person summoned now as a garnishee. What an anomalous state of things is here presented, if the whole subject of complicated accounts and protracted and multifarious transactions are to be examined with one of the contradicting parties silent, while the other is virtually on trial. There must be close limits assigned to such a side investigation. Whatever would require a law suit between the garnishee and his creditor for elucidation ought not here be drawn into question. Whatever is certainly owing and liable now or hereafter to execution, without any conditions, should alone be the subject of evidence *aliunde.*

The garnishee's unsuspicious statements should stand unless they can be clearly contradicted without involving the grounds of a litigious contest. The garnishee ought not be incidentally forced into a long complicated defence of himself against the defendant by an attack of the plaintiff through the defendant, in an attachment suit, when there yet has been no judgment against the defendant, and the lien arising by seizure has not been perfected. The right and interest of the attaching creditor would not necessarily be wholly lost should the garnishee be discharged, since he might yet in case he gained judgment against the defendant, levy on execution upon property in the third person's hands, if he can make out the requisite facts, at that stage.

If, pending the attachment suit, the plaintiff should be allowed unlimited scope in traversing the garnishee's answers, there would be no end to the litigation. All persons interested ought to be allowed to intervene, and there would be confusion worse confounded. Certainly the inquiry should not go beyond the question whether or not the garnishee's answers are true with the view of deciding upon his immediate liability free from all contingencies whatever."

Again, on page 365, referring to the garnishees, he says:

"The garnishee may plead prescription or anything that would be a good defense against the alleged indebtedness, were the suit directly

brought by his own creditor.  He may plead want of consideration. He may plead set off, but if such plea should involve the liquidation of accounts between him and the defendant, it would seem that the investigation ought not be had in the attachment proceeding,. and that the garnishment should not be sustained.  Proof of set off in such proceeding would not be adduced contradictorily with the defendant, and he would not be bound by the statements of the garnishee, nor by the judicial finding thereon, .should he afterwards sue for settlement. Of course the defendant is not put to the worse by any acknowledgement of indebtedness, to him by the garnishee, nor can he by any denial thereof, but the investigation of accounts with one of the parties thereto left out of the inquiry, seems not advisable.

However, if the garnishee answers that he owes the defendant a stated sum on account the attaching creditor may hold him to it.  If, on the other hand, he should honestly state, that he believes that he is indebted to the defendant on account, but that he cannot approximate the amount, without a settlement, he ought to be discharged."

The author takes the same view of the subject, though presented in a different form, on page 368, where he says:

"If in defending, the garnishee should claim to be the owner of the thing sought to be subjected to the process of attachment, the question is whether his right is superior to that of the attaching creditor.  If he is really the owner and so answers, and that fact is established, the creditor of the defendant could not maintain the garnishment.

But the validity of the garnishee's title to property in his custody when he claims to be the owner, cannot be adjudicated on a rule traversing his answer.  Such an issue can only be passed upon in a direct suit."

He cites in support of this last position the decision of this court in Ivens vs. Ivens, 30 Ann., 249.   (See on this same subject, 27 Ann., 455, and 34 Ann., 592.)

No exception was taken by the garnishees to the traverse of their answers.

They permitted an investigation of the situation between Fourchy and themselves to be gone into without objection.

This court, in Carter Brothers & Co. vs. Galolway & Burns, 36 Ann., 732, declared that in the absence of such an exception or objection in the lower court it would consider this objection waived.   For this

reason, while there is much force, in what appellees now urge, we must base our decision upon some other ground. Outside of this particular question the only issue presented is one of fact. Were the answers of the garnishees true or not? The District Court held that they were true. There is not only nothing in the record which would warrant us in saying that there was error in this conclusion, but our examination leads us to a similar one.

The judgment appealed from is hereby affirmed.