(103 So. 733)

No. 26106.

## WILKINSON v. MACHECA.

(May 12, 1924. On Rehearing March 2, 1925. Second Rehearing Denied March 30, 1925.)

*(Syllabus by Editorial Staff.)*

1. **Judgment** ⬿650—**Interlocutory judgment on rule to cancel notice of lis pendens held not available as basis for plea of res judicata.**

Where the merits of the issues raised by a rule to cancel a notice of lis pendens were not passed on the trial of the rule, judgment thereon was interlocutory and could not be made the basis for a plea of res judicata, in view of Code Prac. arts. 538, 539, and Rev. Civ. Code, art. 2286.

2. **Judgment** ⬿649—**Dispositions of question, whether raised by plea, exception, intervention, etc., are res judicata.**

Dispositions of question, whether raised by plea, exception, intervention, etc., are res judicata.

3. **Lis pendens** ⬿20—**Question as to sufficiency of garnishee's title could not be raised in rule to cancel notice of lis pendens.**

Question as to sufficiency of garnishee's title could only be raised in direct action brought for that purpose, and could not be raised in a rule to cancel notice of lis pendens.

4. **Garnishment** ⬿167—**Issue as to validity of garnishee's title to property in his possession cannot be passed on in rule to traverse his answer.**

Issue as to validity of garnishee's title to property in his possession can only be adjudicated in a direct suit brought to test the sufficiency of the title, and could not be passed on in a rule to traverse garnishee's answer.

5. **Lis pendens** ⬿24(3)—**Sale of property by insolvent debtor or his purchaser pending revocatory action by creditor of such debtor not sanctioned by law.**

The sale of property by an insolvent debtor or his purchaser pending a revocatory action by a creditor of such debtor as original owner, is not sanctioned by law, in view of Rev. Civ. Code, art. 2453.

6. **Fraudulent conveyances** ⬿243—**Bonding of property attached held not to release it from claims of creditor in revocatory action.**

The bonding of property attached *held* not to release it from the claims of a creditor in a revocatory action, in view of Rev. Civ. Code, arts. 1977, 2453.

## On Rehearing.

7. **Appeal and error** ⬿840(4) — **That trial judge rested his decision on one plea and failed to pass on others held not to preclude Supreme Court from considering pleas not passed on.**

That trial judge rested his decision in favor of appellee on one of the latter's pleas and failed to pass on the others *held* not to preclude the Supreme Court from considering the pleas not passed on in event of insufficiency of plea on which judgment rested, especially where appellee joined in the appeal asking for affirmance in such contingency, based on pleas not passed on.

**8. Fraudulent conveyances ⬤═225—Creditor's garnishment of selling price of land in hands of surety on release bond held not to estop creditor from revoking sale and subjecting property to payment of debts.**

A creditor's garnishment of the selling price of land in the hands of a surety on a release bond *held* not to estop creditor from revoking sale and subjecting the property to the payment of debts.

**9. Fraudulent conveyances ⬤═225—Estoppel not favored in law.**

Estoppel is not favored in law, especially where the party seeks to set aside a fraudulent sale or to uncover a simulated transaction.

**10. Estoppel ⬤═56—Plea of estoppel held not available where party pleading it was not induced by plaintiff to change position.**

Plea of estoppel *held* not available, where party pleading it was not induced by plaintiff to change his position or to act differently from the way he would have acted otherwise.

**11. Fraudulent conveyances ⬤═243—Attaching creditor held not precluded from setting aside as fraudulent sale of property after its release by giving of bond.**

An attaching creditor *held* not precluded from setting aside as fraudulent a sale of property after its release by debtor's giving of bond.

Appeal from Civil District Court, Parish of Orleans; Mark M. Boatner, Judge.

Action by Mrs. Anna M. Wilkinson against Joseph R. Macheca and W. J. Hartman, the latter originally having appeared as garnishee, but subsequently having been made a party defendant. The trial court entered an interlocutory decree and also a final judgment, from which plaintiff appeals, defendant Hartman joining in the appeal from the interlocutory decree. Judgments annulled and reversed, certain exceptions overruled, and cause remanded, with directions.

Edgar M. Cahn and Spencer, Gidiere, Phelps & Dunbar, all of New Orleans, for appellant.

Monroe & Lemann and Walter J. Suthon, Jr., both of New Orleans, for appellee Hartman.

By Division B, composed of Justices DAWKINS, LAND, and LECHE.

LAND, J. Plaintiff, suing upon a New York judgment for alimony, attached the one-eighth interest of defendant, a nonresident, in certain residence property at the corner of Camp and Phillip streets in the city of New Orleans. By supplemental petition filed March 30, 1921, the original demand of plaintiff for alimony was increased from $3,320 to $4,197.97, and, by further amendment of petition filed June 29, 1922, the latter amount claimed was increased to $5,822.97.

Defendant obtained the release of the property attached on a bond in the sum of $2,475, executed September 12, 1921.

Numerous third persons, including William J. Hartman, were made garnishees, and answered that they were not indebted to defendant in any amount. A second writ of attachment issued upon the filing of the supplemental petition June 29, 1922. Hartman was made garnishee under both the first and second writs of attachment. In his answer as garnishee under the first writ made April 8, 1921, he denied any indebtedness to defendant. In his answer as garnishee under the second writ, he made a similar denial, and stated that he had purchased on September 12, 1921, the interest of defendant in the property attached for the price of $1,650.

On June 22, 1921, plaintiff filed a rule to traverse the answers made by Hartman as garnishee on April 8, 1921, and on October 24, 1921, plaintiff filed a second rule to traverse the answer of Hartman as garnishee made on October 3, 1921.

The grounds of these rules to traverse were that the answers of the garnishee were false and evasive.

On January 17, 1922, these rules were ordered dismissed by the court, as shown by minute entry, no formal judgment being signed.

On November 28, 1921, plaintiff filed and recorded in the office of the recorder of mortgages for the parish of Orleans a notice of

lis pendens, reciting the pendency of her original suit filed May 13, 1920, of her supplemental petition filed March 13, 1921, increasing her demand to $4,197.97, and of the rule to traverse the answers of W. J. Hartman as garnishee made October 3, 1921.

On February 15, 1922, Hartman, garnishee, took a rule on plaintiff to cancel and erase the notice of lis pendens recorded November 28, 1921, on the ground that the property had been released on bond, and that said notice had been filed by plaintiff through her attorney "illegally and wrongfully, there being no warrant in law for same."

The exceptions to rule to cancel tendered by plaintiff were overruled, and on June 20, 1922, a judgment was rendered making absolute the rule to cancel inscription of notice of lis pendens of date November 28, 1921. No appeal was taken from this judgment.

On January 17, 1922, a judgment was rendered dismissing the rule to traverse, no appeal being prosecuted from this judgment. On February 6, 1923, Hartman, garnishee, filed a second rule to cancel a second inscription of the notice of lis pendens recorded on June 30, 1922, and referring to the pendency of the supplemental petition filed June 29, 1922. The second rule to cancel the second notice of lis pendens recites the purchase by Hartman from defendant, on September 12, 1921, of the interest of defendant in the property attached, the release of said property from seizure on bond in the sum of $2,475, the proceeding thereafter by plaintiff against Hartman under garnishment process, and by rule to traverse his answers as garnishee, the recordation, in connection with said proceedings, on November 28, 1921, of the first notice of lis pendens, and the finality of the judgments dismissing the rules to traverse and to cancel the inscription of the first notice of lis pendens.

Mover alleges in said rule that plaintiff, in her supplemental petition filed June 29, 1922, has attempted, illegally and wrongfully, to revive the issues already determined in his favor in the proceedings already had.

The exception of res adjudicata *pleaded to the supplemental petition* of plaintiff has never been passed upon by the lower court, as said exception has never been tried. The plea of res adjudicata set up *in the second rule of Hartman* to cancel the second notice of lis pendens is based solely *upon the allegations of the first notice of lis pendens,* upon the statement that *the allegations of the second notice* are similar, and upon a judgment of date June 20, 1922, ordering the cancellation of the first notice, and also upon a judgment of date January 17, 1922, dismissing the rule to traverse the answers of Hartman as garnishee.

The first rule to cancel the first inscription of notice of lis pendens was filed February 15, 1922. It is based upon the allegations that Hartman had purchased the interest of defendant in the property attached on September 12, 1921, upon the release of the attachment upon bond, and that plaintiff, through her attorney, illegally and wrongfully and without warrant of law recorded said notice in the office of the recorder of mortgages of the parish of Orleans.

It is true that the first notice of lis pendens contained the averment that:

"The transfer by Joseph R. Macheca, on the 12th of September, 1921, of his interest in said real estate to said William J. Hartman, was collusive and of no effect between the parties, and was in violation of the writ of attachment and garnishment proceedings instituted and pending in said cause, and that no real consideration or otherwise passed between the parties to said transfer, and that the object of said alleged transfer and sale was to deny and defeat the rights of plaintiff," etc.

[1] However, the first rule to cancel the notice of lis pendens raises no issue as to simulation and fraud or collusion to place the property transferred beyond the reach of plaintiff, a judgment creditor, and no such

issues were passed upon on the trial of said rule. The merits as to these issues were not gone into at all.

The judgment on the rule was, therefore, interlocutory, and not final, and cannot be made a basis for a plea of res adjudicata. C. P. arts. 538, 539.

"The authority of the thing adjudged takes place only with respect to what was the object of the judgment. The thing demanded must be the same; the demand must be founded on the same cause of action; the demand must be between the same parties, and, formed by them against each other in the same quality." R. C. C. 2286.

The demand in the first rule was for the cancellation and erasure of the inscription of the notice of lis pendens as illegal. Its object was not to have the sale from defendant to Hartman declared legal and valid.

[2] The demand in the supplemental petition of plaintiff is much broader than the allegations contained in the notice of lis pendens, as said demand contains, apparently, all of the elements of a resolutory action, and its object is to have said sale declared illegal, null, and void as simulated and fraudulent. The demands, therefore, are not the same in the rule to cancel the notice of lis pendens and in the amended petition filed by plaintiff. It is true that no matter how the question is raised, whether by plea, exception, intervention, etc., the questions disposed of by the judgment are res judicata. Hewett & Bank v. Williams, 48 La. Ann. 708, 19 So. 604; McNeely v. Hyde, 46 La. Ann. 1098, 15 So. 167.

[3] However, it is necessarily true also that the question must be raised. The question as to the sufficiency of the garnishee's title was not raised in the rule to cancel the notice of lis pendens, and could not be raised, except in a direct action brought for that purpose, as will be shown by decisions of this court cited in this opinion.

Moreover, the notice of lis pendens is not annexed to the petition, and is not referred to in the petition. Such notice forms no part of the pleadings in the case, and we cannot conceive how this notice can be resorted to in order to eke out a plea of the thing adjudged. The cancellation of such notice is purely a collateral issue, independent of the merits of the case as to the title of the garnishee, which has been attacked by plaintiff in a direct action of revocation. The plaintiff has had no day in court as to the issue whether said sale is simulated and fraudulent, and should be set aside, and the property transferred by her debtor subjected to the payment of her judgment. Nor can the judgment dismissing the rule to traverse the answers of Hartman be considered as a basis for the plea of res adjudicata. The grounds of traverse are the alleged falsity and evasiveness of the answers of Hartman as garnishee. The issue as to the fraud or simulation of the sale from defendant to Hartman is not raised in this proceeding, and this issue has not been tried on the merits of the case.

[4] In fact, the validity of the garnishee's title to property in his possession, when he claims to be owner, cannot be passed on in a rule to traverse his answer. Such an issue can only be adjudicated *in a direct suit, brought to test the sufficiency of the title.* Liminet v. Fourchy, 51 La. Ann. 1303, 26 So. 87; Wapples on Attachment, p. 368; Peet et al. v. McDaniel & Co., Gardner & Co. and A. Baldwin, Garnishees, 27 La. Ann. 455; Martin Ivens, Jr., v. E. M. Ivens & Co., Johnson, Garnishee, 30 La. Ann. 249.

The plaintiff has taken a devolutive appeal from a judgment rendered on April 9, 1923, and signed on April 23, 1923, ordering the cancellation of the inscription of the second notice of lis pendens recorded on June 30, 1922, against Hartman as the owner of the property attached in this case. Tr. 108, 110.

Plaintiff has also appealed suspensively from a judgment rendered on April 23, 1923, and signed on April 27, 1923, on the plea of res adjudicata, filed herein on July 11, 1922, by W. J. Hartman to the demands of plaintiff in her supplemental petition, filed June 29, 1922, and dismissing her suit.

The basis of this judgment rendered by Judge Boatner is the judgment rendered by Judge King June 20, 1922, ordering the cancellation of the first notice of lis pendens recorded November 28, 1921, and the judgment dismissing the rule to traverse. The new trial *on the rule of Hartman to cancel notice of lis pendens* was refused, and Hartman's plea of res adjudicata to plaintiff's demands against him in her supplemental petition filed June 29, 1922, was maintained.

The judgment sustaining the plea of res adjudicata was not rendered on that plea, *as urged against plaintiff's amended petition*, and formally fixed for trial, *but on the rule of Hartman to cancel the notice of lis pendens*, the plea of res adjudicata being set up expressly *in said rule to cancel*.

[5, 6] For the reasons already assigned, this judgment is erroneous. The judgment signed on April 23, 1923, ordering the cancellation of the inscription of the second notice of lis pendens, is also erroneous, as it appears from the reasons for said judgment assigned by the trial judge, that he was of the opinion that the property went free of the plaintiff's claims, because it had been bonded.

This is not merely an attachment suit. The amended petition filed by plaintiff June 29, 1922, sets forth, ostensibly, a revocatory action. Plaintiff was a judgment creditor of defendant in a sum exceeding $5,000 on September 12, 1921, when defendant, as her debtor, sold to Hartman his interest in the property attached, after it had been released on bond. Plaintiff alleges the insolvency of defendant at the time, to the knowledge of Hartman, and collusion between defendant and his vendee, Hartman, to shield said property from her pursuit as a creditor, through a pretended transfer of said property, which plaintiff charges to be simulated and fraudulent, and devised for the purpose of defrauding her. Plaintiff prays for judgment decreeing said transfer to be simulated, fraudulent, null and void, and of no effect. It is well settled that the law of this state does not and cannot sanction or maintain a sale of property by the original owner or his vendee during the pendency of a revocatory action instituted by a creditor of the original owner, seeking to avoid, in its effects as to him, an alleged fraudulent sale of the same property by an insolvent debtor.

R. C. C. art. 2453; City of New Orleans v. Marchand, 35 La. Ann. 222; Gillespie v. Cammack, 3 La. Ann. 252; Cantereau v. Lacaze, 9 La. Ann. 257; Ranlett v. Constance, 15 La. Ann. 423; Pagett v. Curtis, 15 La. Ann. 453.

In the case of Ranlett v. Constance above cited, we held:

"Under the provisions of article 1972 of the Civil Code, the district judge was authorized to decree that the property itself be applied to the payment of the creditor's claim. It was not the mere attachment that gave a privilege to the plaintiff; but, independently of the attachment, he acquired the right of recourse on the property itself by virtue of his action in revocation. *His remedy is, consequently, two-fold against the bond*, by means of the attachment, *and against the property* through the revocatory action. C. C. 2428." (Italics ours.)

Article 1977 (1972) of the Revised Civil Code declares that:

"The judgment in this action, if maintained, shall be that the contract be avoided as to its effects on the complaining creditors, and that all the property or money taken from the original debtor's estate, by virtue thereof, or the value of such property to the amount of the debt, be applied to the payment of the plaintiff."

Article 2453 (2428) of the Revised Civil Code is to the effect that:

"The thing, claimed as the property of the claimant, cannot be alienated, pending the action, so as to prejudice his right. If judgment be rendered for him, the sale is considered as a sale of another's property, and does not prevent him from being put in possession by virtue of such judgment."

Therefore, the bonding of the property attached did not release said property from the claims of plaintiff in her revocatory action.

The defendant Hartman, in addition to the exception of res adjudicata pleaded to the demands contained in plaintiff's supplemental petition, also pleaded in the alternative:

"(1) That plaintiff having accepted in these proceedings the benefit of the sale now sought to be attacked as fraudulent and simulated is estopped to attack its validity. (2) That said petition states no cause or right of action against defendant."

Neither of these alternative pleas was passed upon by the lower court. Appellee, however, for answer to the two appeals, prays that both judgments be affirmed, but, in the event that the exception of res adjudicata should not be maintained, appellee prays, in the alternative, that we maintain, either the exception of no cause of action, or the exception of estoppel.

Where an exception has not been passed on in the court below, it cannot be considered by this court. Gordon v. Business Men's Racing Ass'n, 140 La. 674, 73 So. 768.

The judgments appealed from are annulled and set aside, and this case is remanded to the court below for further proceedings according to law.

### On Rehearing.

THOMPSON, J. The record in this case presents two appeals—one from an interlocutory decree signed April 23, 1923, directing the cancellation from the mortgage records of a notice of lis pendens, and the other from a final judgment signed on April 27, 1923, sustaining a plea of res judicata and dismissing the suit as against the defendant W. J. Hartman.

The suit as originally instituted was for a moneyed demand against the defendant Macheca, founded on a judgment for alimony rendered in the state of New York.

Macheca being a nonresident, an attachment was issued, and the one-eighth undivided interest of Macheca in certain real estate in this city was seized. Proceedings in garnishment were taken out against several persons, including Hartman, but they availed the plaintiff nothing.

Further installments of the alimony having accrued under the New York judgment, a supplemental petition was filed for the increased amount on March 30, 1921. Another attachment was issued accompanied with garnishment against a number of persons, but these proved likewise ineffective.

The defendant Macheca applied to bond the property attached on June 6, 1921, and the order permitting him to bond was issued on June 28, 1921.

The bond was executed on September 12, 1921, and the property released to Macheca. On the day the release bond was executed, Macheca made a transfer of the property to W. J. Hartman for a recited cash consideration of $1,650. The United States Fidelity & Guaranty Company signed the bond to release the attachment, but did so under an agreement with Macheca that the $1,650, the alleged price of the sale to Hartman, should be deposited with the said surety company to indemnify it for whatever it had to pay on the bond.

On November 28, 1921, after the property had been released on bond and sold to Hartman, the plaintiff filed and caused to be recorded in the mortgage book a notice of the pendency of her suit and attachment. Before the registry of this notice the plaintiff had on September 29, 1921, by supplemental petition, garnisheed the surety com-

pany, and that company on October 11 had answered, stating the conditions on which it had become surety on the release bond, and the circumstances under which it held the $1,650.

Hartman answered the garnishment against him under the first supplemental petition on October 3, 1921, stating that on September 12, 1921, he had purchased the property attached from Macheca for $1,650 cash, and that he was not indebted to Macheca in any amount.

On October 24, the plaintiff filed a rule on Hartman to traverse his answers, alleging that the said answers were false and untrue. This rule to traverse was, after a trial, dismissed by the court on January 17, 1922. No proceeding to traverse the answer filed by the surety company as garnishee was taken by the plaintiff.

On February 15, 1922, Hartman filed a rule to cancel the notice of lis pendens recorded November 28, 1921. In this rule it was alleged that the property had been purchased by Hartman on September 12, 1921, the day on which the said property had been released from the attachment on bond, and that the registry of the lis pendens was wrongful, illegal, and unauthorized by law.

The plaintiff excepted to the said rule on various grounds, among which were that the rule was premature, and that plaintiff in rule could not proceed in the manner and form as attempted. The exceptions were overruled, and the rule was sustained, and the cancellation of the notice of lis pendens ordered. The judgment was signed June 20, 1922.

Thereafter, on June 29, 1922, the plaintiff filed a second supplemental petition in which she claimed an additional amount of alimony. In this petition it was alleged that on September 12, 1921, William J. Hartman illegally connived with Joseph R. Macheca to aid and facilitate the said Macheca in shielding him from the pursuit of the claim of petitioner, and that, accordingly, an arrangement was entered into between the said Macheca and Hartman under which Macheca pretended to convey his one-eighth interest in the property which had been attached and released on bond. It was alleged that at the time of said pretended sale the said Macheca was insolvent to the knowledge of the said Hartman; that the said alleged transfer was simulated and fraudulent, and was entered into by the said parties for the purpose and with the intent of defrauding petitioner as a creditor and shielding the said real estate from the pursuit of petitioner as a creditor of said Macheca; that said pretended sale was a pretense and without consideration, and, in the alternative, a fraud on the rights of petitioner.

The prayer was for citation to Macheca and Hartman, and after due proceedings that the said pretended transfer by Macheca to Hartman be decreed to be fraudulent, simulated, null and void, and set aside, and that the said property be made subject to execution under such money judgment as might be rendered against Macheca.

After filing the supplemental petition, the plaintiff, on June 30, 1922, filed and caused to be recorded a second notice of lis pendens.

To the second supplemental petition Hartman on July 11, 1922, filed consecutively, but in one document, a plea of res adjudicata, estoppel, and of no cause and no right of action.

And thereafter on February 6, 1923, the said Hartman filed a rule to have canceled the second notice of lis pendens. In this rule it was alleged that the plaintiff, in placing the notice of record, was attempting, in an illegal and wrongful manner, to get another hearing on the issues which had been determined adversely to plaintiff in the judgment of January 17, 1922, which dismissed plaintiff's rule to traverse the answers of Hart-

man, garnishee, and in the judgment of June 20, 1922, which ordered the cancellation of the first notice of lis pendens.

To this rule the plaintiff excepted on the same grounds and for the same reasons as urged in her exception to the rule to cancel the first notice of lis pendens. The exceptions were overruled, and the rule to cancel was made absolute.

The plea of res adjudicata filed July 11, 1922, was likewise sustained, and the suit was dismissed as against Hartman.

As noted in the beginning of this opinion, the two judgments just mentioned are now before us for review.

On the original hearing of the case we reversed both judgments and remanded the case, holding that the plea of res judicata was not well founded, and that the judgment canceling the notice of lis pendens was erroneous for the reasons stated in the opinion.

On reconsideration of the case we see no good reason for changing our ruling on the plea of res judicata. The plea appears to be based on the judgment of June 20, 1922, which ordered the cancellation of the first notice of lis pendens, and on the judgment or interlocutory decree of January 17, 1922, which dismissed the rule filed by plaintiff to traverse the answers to the garnishment by Hartman.

It is quite true that:

" * * * It matters not under what form—whether by petition, exception, rule, or intervention—the question is presented, whenever the same question recurs between the same parties, even under a different form of procedure, the exception of res judicata estops." Greenwood, etc., v. Whitney Bank, 146 La. 567, 83 So. 832.

But the error here is in assuming that the question presented in the revocatory action against Hartman is the same as the question presented in the rule to traverse and in the rule to cancel the first plea of lis pendens. The question of fraud and simulation of the sale from Macheca to Hartman was not raised in either of the said rules, and was not and could not be considered by the court. The sole question tendered in the rule to traverse was the truth or falsity of the answers of Hartman as to whether he was indebted to Macheca or whether he had in his possession any property belonging to Macheca.

The burden was on the plaintiff to prove the falsity of Hartman's answers, and, failing to do so, the plaintiff's rule was dismissed.

Obviously no issue was raised in that proceeding as to whether the garnishee, Hartman, held the property of Macheca under a fraudulent or simulated title. The verity and truthfulness of the sale was not gone into. The plaintiff was not called upon to prove that which was not alleged—and which was admittedly a collateral issue.

And the same is true with respect to the rule to cancel the notice of lis pendens.

The thing demanded must be the same; the demand must be founded upon the same cause of action; the demand must be between the same parties and formed by them against each other in the same quality.

These are vital, essential requisites in order to constitute the "thing adjudged." R. C. C. 2286.

The question presented in the revocatory action is manifestly not the same as that raised in the rule to traverse and the rule to cancel. The demand is not the same, nor are the parties formed in the same quality and capacity. Hartman was a garnishee in the rules to cancel and to traverse; whereas he is party defendant in the revocatory action. Macheca was not a party to either the rule to traverse or the rule to cancel; whereas he is a necessary party to the revocatory action.

The plea of res judicata was fully discussed in the original opinion, and nothing further need be said here.

[7] We were in error in our original opinion in not disposing of the pleas of estoppel and of no cause of action. The two pleas were tried and submitted in the lower court along with the plea of res judicata, and the fact that the trial judge rested his decision on the one plea and failed to pass on the others furnishes no sufficient reason for this court to limit its consideration to the particular plea passed on by the lower court, especially in view of the fact that appellee has joined in the appeal, and has asked the court to determine the pleas of estoppel, and of no cause of action in case the other plea is overruled.

As the two exceptions are closely connected and interrelated, and are supported by practically the same argument and reasoning, we shall consider them as one.

The exceptions are based primarily upon the contention that a party cannot attack a sale and at the same time claim the price or the proceeds derived from such sale.

The proposition is elementary, but the pleader has again fallen into the error of assuming or taking for granted that the plaintiff has claimed or is in the present suit claiming the fund in the hands of the surety company as the price of the sale made by Macheca. The position of the plaintiff is that there was no real sale and hence no purchase price of said land; that the sale was a sham and without a real consideration; that the fund on deposit with the surety company, whether put up by Hartman or Macheca, did not represent the purchase price of a real bona fide sale of the property, but was paid over in consummation of a fraudulent, fictitious, and simulated arrangement between Macheca and Hartman to place the property attached beyond the grasp of any judgment which plaintiff might obtain against Macheca. This has been the persistent and consistent claim of the plaintiff in all the proceedings and pleadings had in the case where the matter has been referred to at all since the said alleged sale was made.

If the facts alleged are true—if it can be shown on the trial of the case that the purported sale from Macheca to Hartman was not intended as a bona fide sale but was intended to place the property beyond the reach of Macheca's creditors, that there was no consideration in fact paid in said transaction, and that the money put up as the price of the sale was in point of fact the money of Macheca, or, if the money of Hartman, that it was to be returned to him if the alleged scheme ultimately proved successful, then surely the court would not hesitate to set the said sale aside. The allegations of the plaintiff's supplemental petition are amply sufficient to admit of proof of all such facts.

[8] We know of no rule of law or good morals that would estop or preclude the plaintiff from demanding the revocation of the sale and subjecting the property to the payment of her debt simply because she had arrested the fund alleged to represent the price of the sale in the hands of the surety on the release bond.

If, as claimed, the money belongs to Macheca and was put up by him, then surely the plaintiff has the right to claim said fund and at the same time to sue to uncover the fraudulent transaction under which the said money was deposited.

If, on the other hand, the money is the money of Hartman and was paid by him in carrying out the alleged fraudulent and collusive scheme, the plaintiff had the right to arrest the said fund in the hands of the garnishee and have it held until the final determination of the issue of fraud and simulation. We repeat that the plaintiff has never claimed the fund as the price or proceeds of the sale of the property, and under the circumstances we are unable to conceive how

the doctrine of estoppel, founded on considerations of equity and fair dealing, can be applied in this case.

Should the plaintiff fail in her proof on the trial on the merits, the sale of the property will be maintained, and the plaintiff will be relegated to the bond of release.

[9] Estoppel is not favored in law, and especially is the doctrine not applicable where it is sought to set aside a fraudulent sale or to uncover a simulated transaction.

[10] Neither the garnishment issued against the surety company nor any act of the plaintiff in any proceeding had or document filed in this case has obtained for the plaintiff any undue advantage to the prejudice of the rights of Hartman. Nor has the latter been induced by any act of the plaintiff to change his position or to act differently from the way he would have acted. The plea of estoppel is therefore not tenable.

[11] It is further contended that the bond for the release of the property attached took the place of the property, and that the plaintiff could no longer pursue the property, but was relegated to the bond. This appears to be the reason given by the trial judge for ordering the cancellation of the second notice of lis pendens.

As an abstract legal proposition, it is unquestionably true that the release bond takes the place of the attached property, and that the right of the attached debtor to make a valid and legal sale of the released property is as unlimited and unrestricted as it was before the seizure under the attachment.

It is also true that the creditor cannot, by virtue of his attachment and the privilege resulting therefrom, pursue the property in the hands of a bona fide purchaser.

But to say that the bonding of the property confers on the debtor the right to make a fraudulent and simulated sale of the property, and that the attaching creditor cannot sue to set aside such a sale, is to state a proposition that cannot be sustained under any law. The creditor may, independently of the release bond, proceed against the property in the hands of the purchaser who holds only by virtue of a fraudulent and simulated title. The creditor has this right independently of the attachment, and surely the right is not destroyed by the attachment and the bonding of the property.

The further contention is made that the petition does not allege that the plaintiff has been injured by the sale sought to be annulled. The contention can hardly be taken as serious. The second supplemental petition taken in connection with the original and first supplemental petition and all the rules, motions, and pleas filed in the case show that the property attempted to be brought back is all the property which Macheca owned at the time of the sale; and the record shows that the plaintiff has unsuccessfully exhausted the power and process of the court in an effort to discover money and property belonging to Macheca out of which she could collect her debt. This is all that could be required to meet the contention on this score.

Our conclusion is that both judgments appealed from are erroneous and should be reversed, and all the exceptions should be overruled, and the notice of lis pendens should be reinstated until a final judgment is had on the trial on the merits. We shall accordingly recast the judgment heretofore rendered.

For the reasons assigned, the judgments appealed from are annuled and reversed, the exceptions of res judicata, estoppel, and of no cause of action are overruled, the notice of lis pendens recorded of date June 30, 1922, to be reinstated, and that the case be remanded to the court below to be tried according to law and the views herein expressed. The cost of this appeal to be paid by the defendant Hartman.

The right is reserved to the appellee to file a second application for rehearing.