209 So.2d 355 (1968)
Philip J. SCIORTINO
v.
Regina Ortolano SCIORTINO.
Regina ORTOLANO, wife of Philip James SCIORTINO
v.
Philip James SCIORTINO.
Nos. 2876, 2877.
Court of Appeal of Louisiana, Fourth Circuit.
April 8, 1968.
Rehearing Denied May 6, 1968.
Writ Refused June 21, 1968.
*357 Herman & Herman, Walter D. Kelly, New Orleans, for Regina Ortolano Sciortino, defendant and plaintiff in reconvention and appellee.
Joseph S. Russo, New Orleans, for Philip J. Sciortino, plaintiff and defendant in reconvention and appellant.
Joseph S. Russo, New Orleans, for Warren A. Sciortino, defendant in reconvention and appellant.
Before CHASEZ, HALL and RAINOLD, JJ.
CHASEZ, Judge.
This matter is on appeal before this Court for the third time. The litigants, Regina Ortolano Sciortino and Philip J. Sciortino, have litigated continuously over marital difficulties for the past five years. This latest appeal is by Philip J. Sciortino, the husband, who challenges the validity of a judgment granting his wife a divorce based on a voluntary separation of two years. Appellant further complains that the trial court erred in determining property rights of the litigants and in awarding custody of the children to the mother.
To understand the current bone of contention, it is necessary to give a history of the litigation and certain actions of the protagonists in connection therewith.
In September 1961, Regina Sciortino filed suit against her husband Philip for a separation from bed and board and judgment was rendered by default in her favor on February 8, 1962.
Plaintiff and defendant subsequently reconciled in September, 1962 without executing a notarial act to reestablish the community.
In December 1963 Regina and Philip Sciortino jointly purchased property at 912 Constantinople Street reserving the right of use and habitation to the vendor, Thomas Ortolano, the wife's father.
On October 14, 1964, Philip Sciortino left the matrimonial domicile on Constantinople Street because he and his wife again were having difficulties.
A short time thereafter the wife filed suit for separation on the grounds of abandonment and obtained an injunction restraining her husband from returning to the matrimonial domicile. After this matter was tried the trial judge awarded Regina Ortolano Sciortino a separation on the ground of abandonment, and this court on June 6, 1966 reversed that judgment, 188 So.2d 224.
On June 6, 1966 the court also rendered an opinion in a partition suit brought by Philip J. Sciortino, 188 So.2d 221. The property sought by Philip to be partitioned was the real estate at 912 Constantinople and the business operated as "Regina, Queen of Caterers". This court remanded this matter for evidence to determine the status of "Regina, Queen of Caterers". The opinion also instructed that the immovable property be partitioned at the same time the community property, if any, was partitioned.
On October 7, 1966, the Supreme Court refused the application of Regina Ortolano Sciortino for review of this court's opinion reversing her judgment of separation, 249 La. 726, 190 So.2d 237. Writs were not applied for in the decision ordering ultimate partition of the immovable property.
On October 17, 1966, Regina filed suit for divorce based on two years separation and asked for custody of her four children and child support. Her husband contested her right to the divorce and to custody.
There are several other demands and reconventional demands concerning the businesses operated by litigants, but it is not necessary to fully outline them in this opinion. After the divorce action was filed, the partition suit and the divorce suit were consolidated and some time before the consolidated *358 matter came to trial on the merits, despite the decree of this court concerning partition of the real estate, Philip Sciortino sold the property at issue to Warren Sciortino for $27,000.
After this sale, Regina Sciortino amended her pleadings seeking to annul the sale by Philip to Warren. She named Philip Sciortino, Warren Sciortino and their attorney Joseph Russo, defendants, alleging the three conspired to defraud her of her interest in the property transferred and in so doing violated an order of Court.
Defendants Joseph Russo and Warren Sciortino pleaded exceptions of no cause of action. In addition Philip and Warren Sciortino answered asserting the sale was valid, and in the alternative, urged that if the court held Philip could not sell Regina Sciortino's half interest in the property, then the validity of the sale of Philip's interest should be maintained.
After a lengthy trial on the merits, the trial court rendered judgment:
1. Granting Regina Ortolano Sciortino a divorce based on two years voluntary separation.
2. Awarding Regina Ortolano Sciortino custody of her four children and ordering Philip J. Sciortino to pay $400.00 per month child support.
3. Declaring null and void the sale by Philip to Warren Sciortino.
4. Ordering the property at 912 Constantinople Street partitioned.
5. Awarding Regina Sciortino $2700 attorney's fees as damages incurred by her by his wrongful sale of property.
6. Maintaining the exceptions of no cause of action filed by Joseph Russo and Warren Sciortino.
From the judgments rendered in these consolidated cases Philip J. Sciortino has appealed. The wife Regina Ortolano Sciortino has answered the appeal only for the purpose of challenging that part of the judgment dismissing Warren Sciortino as a defendant in the action to nullify the sale of property at 912 Constantinople Street. Apparently the only part of the judgments not at issue on this appeal is the trial court's maintaining the exception of no cause of action urged by Joseph Russo, attorney for Philip Sciortino who passed the disputed act of sale.
We shall first consider appellant's contention that plaintiff was not entitled to a divorce under the provisions of LSA-R.S. 9:301. That act provides:
"When the spouses have been living separate and apart continuously for a period of two years or more, either spouse may sue for and obtain a judgment of absolute divorce."
The evidence establishes that Philip Sciortino left the matrimonial domicile on October 14, 1964 and that although he returned to the domicile several times thereafter, his wife did not remain in the house with him when he returned. At one time when the husband returned his wife was in the hospital. Approximately two months after he left the domicile in October 1964, he was enjoined from returning by order of the Civil District Court for the Parish of Orleans. The husband admits that his wife left the house or was absent therefrom every time he returned during the two years the wife states they were separated.
Therefore, all litigants seem to concede that as far as the wife was concerned the separation of two years was entirely voluntary. What the appellant seems to argue to this court is that for the two year divorce action to lie the wife must leave the matrimonial domicile for the proscribed period if she is the spouse desiring to separate. Appellant also seems to contend the separation must be voluntary on the part of both parties in order for the action to lie.
We find no merit in these contentions. In Otis v. Bahan, 209 La. 1082, 26 So.2d 146, 166 A.L.R. 494, the Supreme Court interpreted *359 Act 430 of 1938 (now LSA-R.S. 9:301 as amended by Act 31 of 1960) to mean that the separation must be voluntary only with respect to one of the parties. Appellant cites Sciortino v. Sciortino, La.App., 188 So.2d 224, as authority for the proposition that the separation must be mutually agreeable to both parties for divorce to lie under the two year act. This was not the holding. It is true this court held that both parties must assent to the voluntary separation where the relief sought is a judgment of separation on the grounds of living separate and apart for one year, but the opinion makes it clear that in the two year divorce action the separation must be voluntary only with respect to one of the parties.
We therefore conclude the trial court properly awarded plaintiff Regina Sciortino a divorce a vinculo matrimonii based on two years voluntary separation.
Appellant next contends that the court improperly awarded custody of the four children to their mother. At the time of the trial, the oldest boy was 17 and the youngest boy was 12. The three oldest attend boarding school in Covington and the youngest was enrolled in a parochial school in New Orleans. Appellant would have the court believe the mother shipped the boys off to school to have them out of the way, yet the record reveals that when the parents lived together, they had planned to send their children to the boarding school they now attend because they felt the boys would be provided with the best education available. In fact, before the separation, Philip Sciortino bragged to his friends about his two oldest sons attending the school in question. The third boy was not at that time old enough to be registered there. Appellant argues he is entitled to custody of the children unless "plaintiff appellee has established by a preponderance of the evidence that it would be for the greater advantage of the children (or any of them) to award custody to plaintiff-appellee."
Our review of the record indicates the evidence does so preponderate. Without repeating the voluminous testimony, it is apparent that the mother does appear to be more concerned with the children's welfare, while the father apparently is willing to use his children to retaliate against his wife. In the course of this long-fought battle between the spouses, the father has been cited for contempt on numerous occasions for failing to pay child support ordered by the court and at no time was the figure excessive. Regina Sciortino has never sought alimony for herself in view of the fact that she has a separate income, thus the court-ordered payments that the husband so regularly resisted were payments that should have been made for the maintenance of his children.
In awarding custody of children, our jurisprudence contains two well established principles that we conclude are apposite to the instant case. One is that a mother has the paramount right of custody unless she is proved morally unfit (See Sampognaro v. Sampognaro, 215 La. 631, 41 So.2d 456), and the other is that broad discretion in awarding custody is vested in the trial judge. The determination of custody by the trial court should not be disturbed unless shown to be manifestly erroneous. (See Willis v. Willis, 209 La. 205, 24 So.2d 378.)
Appellant has failed to prove any facts that would justify any departure by us from these well established principles of law. Therefore, we will not disturb the judgment insofar as it awards custody of the children to their mother.
Next, appellant urges that the award of child support of $400.00 per month is excessive and should be reduced to $300.00 per month.
Regina Sciortino testified that the monthly expenses incurred for the support and maintenance of her four children is $780.00, plus an additional $600.00 per annum for educational trips for several of the children that are sponsored by their school. If the expense of the educational trip is pro-rated over a twelve month period, it totals $50.00 per month in addition to the $780.00 figure.
*360 The individual expenses that total $780.00 per month include tuition for the children, laundry, medical expenses, food, etc., hardly items that would constitute evidence of extravagant living as appellant contends.
Regina Sciortino testified that she earns approximately $15,000 net from her catering business and therefore does not require alimony. Her own living expenses total about $800.00 per month. Her husband's testimony is evasive concerning his income. At times he stated he earned more than $10,000 per year net and in other instances he would place the figure nearer $7,000. In view of the fact that he is earning more than $10,000 per year by his own admission, we are of the opinion that $400.00 per month child support is reasonable.
The next specification of error urged by appellant is that the trial court improperly concluded that the community was partitioned voluntarily by husband and wife when they were first judicially separated in 1962.
Mrs. Sciortino testified that when her husband left in September 1961 there was little community property. Her business, Regina Queen of Caterers, had been established in 1959 and any profits derived from it were used by the family for living expenses. The husband admitted that most of the furniture in the matrimonial domicile in 1961 had been replaced by the time this divorce action was filed, other than a bedroom suite and furniture in the children's room.
When the litigants separated in September 1961, they agreed that Philip Sciortino would keep his business, Regina Supply Company, and would take the 1959 automobile, and Regina Sciortino would keep the furniture and her business, Regina, Queen of Caterers. In November 1961 after the filing of the first separation suit, but prior to the judgment of separation, Philip Sciortino acquired a business that performs a service in connection with the registration of motor vehicles. Judgment of separation was rendered February 8, 1962, dissolving the community of acquets and gains. When the parties reconciled in September 1962, the community was not reestablished by authentic act under the provisions of Civil Code Article 155. In fact from the conduct of the parties, both were content to remain separate in property.
After the resumption of hostilities in 1964, the husband first filed suit for a partition of real estate acquired jointly by him and his wife in December 1963 and the business Regina, Queen of Caterers. He first asserted that he and his wife were separate in property and attempted to style the partition of the catering business as a dissolution of a partnership. He later amended and pleaded the contradictory fact that the catering business was a community asset.
Appellee denies his right to a partition of community property. She asserts the partition was accomplished by agreement in September, 1961 and while it might have been voidable ab initio, it was ultimately ratified after the judgment of separation rendered in February 1962.
There is no doubt from the record that the parties were incapable of contracting with each other when the voluntary partition of community effects was made. In Sheard v. Green, 219 La. 199, 52 So.2d 714, the Supreme Court held that a partition of community was invalid if executed prior to judicial separation or divorce. Undoubtedly the litigants herein did not have the capacity to contract until after judgment of separation was rendered on February 8, 1962.
Counsel for Regina Sciortino concedes this incapacity but urges that the parties can validate such an agreement if they ratify it after the separation when they are no longer prohibited from contracting with each other. The wife relies on Tilton v. Tilton, La.App., 162 So.2d 733, wherein this court held that a partition of community agreed to while the parties were still married, although invalid in its inception, could be validated if the parties ratified their *361 agreement after the marriage was dissolved. We reaffirm the holding therein.
We must next determine whether the litigants did in effect ratify the voluntary partition of community effects. The evidence indicates that both parties operated their businesses as separate entities and at this time all enterprises operated by either litigant were in their infancy and not earning large profits. Thus the net profits from all barely covered the separate living expenses of husband and wife.
In May 1962, prior to the reconciliation, Philip Sciortino traded the 1959 automobile on a new model car without tendering any part of the trade-in value to his wife. For the purpose of this transaction, the automobile was treated by Philip Sciortino as his separate property, and, at that time, it was the most valuable asset owned by the community. We hold this action on the part of Philip Sciortino constitutes a ratification of the voluntary agreement of partition between the litigants, and the validation was supplied by the husband at a time when he was not incapacitated from contracting with his wife. They had not yet reconciled.
Therefore, we are of the opinion that there is no community to partition in view of the fact that the parties effected a voluntary partition, voidable ab initio, but given life by the ratification of Philip Sciortino who cannot now repudiate his own acts and agreement.
Appellant further contends that his wife illegally removed furniture from the marital domicile on October 7, 1966 after the Supreme Court refused writs in her separation suit. As we have said hereinabove, this refusal had the effect of finally rejecting her suit for separation. We find no merit in this contention. The evidence preponderates to the effect that most of the furniture removed was purchased after 1962 with Regina Sciortino's separate funds, and a few items of furniture predating the dissolution of community, were given to the wife in the voluntary partition of community.
Finally, appellant contends the trial court erred in declaring null and void the sale of property from Philip Sciortino to his brother Warren Sciortino.
The property in question is the house at 912 Constantinople Street, purchased by Regina and Philip Sciortino from Thomas Ortolano in December 1963. At the time, the purchasers, although married, were separate in property.
On August 11, 1965, Philip Sciortino filed suit against his estranged wife to have this property partitioned and this court, in an opinion rendered in June 1966, ordered the partition.
After this court had ordered the partition and remanded the case to permit introduction of evidence on the community property issue, Philip Sciortino on the advice of his attorney sold the property to his brother. The act was passed November 11, 1966 by Joseph Russo, defendant's attorney in this matter. The recited consideration was $5,000 cash assumption of a mortgage in favor of Thomas Ortolano for $10,507.04, and for the balance, purchaser executed a Bearer note in the amount of $11,992.96.
From the testimony of Warren Sciortino, the purchaser, it is abundantly clear that the sale constituted an attempt to divest Regina Sciortino of her interest in the property. The purchaser stated that he was advised that under an article of the Civil Code, yet untested by litigation, the sale might be valid. Warren was guaranteed that if the sale was declared to be invalid, his $5,000 would be refunded. The article in question is Civil Code Article 2334, which reads:
"The property of married persons is divided into separate and common property.
"Separate property is that which either party brings into the marriage, or acquires during the marriage with separate funds, or by inheritance, or by donation made to him or her particularly.

*362 "The earnings of the wife when living separate and apart from her husband although not separated by judgment of court, her earnings when carrying on a business, trade, occupation or industry separate from her husband, actions for damages resulting from offenses and quasi offenses and the property purchased with all funds thus derived, are her separate property.
"Actions for damages resulting from offenses and quasi offenses suffered by the husband, living separate and apart from his wife, by reason of fault on her part, sufficient for separation or divorce shall be his separate property.
"Common property is that which is acquired by the husband and wife during marriage, in any manner different from that above declared. But when the title to community property stands in the name of the wife, it cannot be mortgaged or sold by the husband without her written authority or consent.

"Where the title to immovable property stands in the names of both the husband and wife, it may not be leased, mortgaged or sold by the husband without the wife's written authority or consent where she has made a declaration by authentic act that her authority and consent are required for such lease, sale or mortgage and has filed such declaration in the mortgage and conveyance records of the parish in which the property is situated. (As amended Acts 1962, No. 353, § 1.)" Emphasis supplied.
It is the italicized portion of the article, or the last paragraph, that counsel for defendant cited to the purchaser and seller as a possible basis for the sale. In our view a reading of the article clearly indicates the last paragraph refers to community property. But, be that as it may, in view of the fact that all parties to this sale were aware of a court order to partition the property in question, we are compelled to conclude that all parties to this act were attempting to divest Regina Sciortino of her interest in this property that had been clearly recognized by the court prior to the sale. This conclusion is fortified by the fact that neither Regina Sciortino nor her attorney were informed of the proposed sale and from the testimony and the act itself, the wife was not tendered any funds for her separate interest in the property. Because a partition recognizing the wife's interest had previously been ordered and because this court specifically ruled that the partition must await determination of the community property question, we are of the opinion that all participants acted in bad faith.
In the judgment nullifying the sale between Philip and Warren Sciortino, the trial court awarded attorney's fees in the sum of $2700 to Regina Ortolano Sciortino. In the absence of statutory authority conferring the right to attorney's fees on the plaintiff, we conclude our jurisprudence does not authorize such an award.
In the partition judgment, the trial court maintained the exception of no cause of action filed by Warren Sciortino. In view of the fact that we have concluded that Warren was fully apprised of the court order to partition the property before he took title, we conclude that Warren Sciortino was properly a party before the trial court and the judgment rendered in this cause should have declared the sale a nullity with respect to Warren Sciortino, the bad faith purchaser, as well as Philip Sciortino.
For the reasons assigned, the judgment of February 9, 1967 rendered in proceedings No. 2876 of this court, entitled Philip J. Sciortino vs. Regina Ortolano Sciortino, the action for partition is reversed insofar as it awarded attorney's fees to Regina Ortolano Sciortino for the illegal sale of her property; and reversed insofar as it maintained the exception of no cause of action urged by Warren Sciortino. It is now ordered that the sale by Philip Sciortino to Warren Sciortino is declared to be a nullity as to both vendor and vendee. The partition judgment is amended to reassess costs as to *363 be outlined hereinafter, and in all other respects it is affirmed.
The judgment of January 10, 1967, rendered in proceeding No. 2877 of this court, entitled Regina Ortolano, wife of Philip James Sciortino vs. Philip James Sciortino, granting a divorce a vinculo matrimonii to Regina Ortolano Sciortino; awarding custody and control of the four minor children, George J., Ronald R., Thomas J., and Philip J. Sciortino, Jr., to their mother Regina Ortolano Sciortino, and ordering Philip James Sciortino to pay child support for his four children in the sum of $400.00 per month to Regina Ortolano Sciortino is affirmed.
In conformity with the decree in this consolidated matter concerning the partition, it is now ordered by this court that the partition by licitation ordered by the trial court, and previously ordered by this court, be made of the following described property:
"TWO CERTAIN LOTS OF GROUND, together with all the buildings and improvements thereon, and all rights, ways, privileges, servitudes, appurtenances, and advantages thereunto belonging or in anywise appertaining, situated in the SIXTH DISTRICT of New Orleans, in SQUARE 227, bounded by Constantinople, Magazine, Camp, and Marengo Streets, designated as LOTS NOS. 19 and 20 on a plan of H.W.W. Reynolds, D.C.S., dated July 29, 1867, attached to an act before Fred Zengel, late a Notary Public, dated September 7, 1891, adjoining and measuring each 30 feet front on Constantinople Street, by 120 feet in depth between parallel lines. Lot No. 20 begins 60 feet 2 inches from Magazine Street. Improvements bear Municipal No. 912 Constantinople Street."
The sale of the property is to be made subject to the right of lifetime use and habitation reserved unto Thomas Ortolano.
All costs of this court incurred since July 5, 1966, including the matters now before us shall be paid by Philip James Sciortino. The only cost incurred by either litigant since that date not chargeable to Philip James Sciortino is the cost to apply for writs of certiorari to the Supreme Court expended by Regina Ortolano Sciortino in connection with her separation suit.
Reversed in part; affirmed in part; amended in part; and rendered.